COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Lemons[*] and Frank
Argued at Chesapeake, Virginia


GWALTNEY OF SMITHFIELD, LTD. AND
 THE TRAVELERS INDEMNITY
 COMPANY OF ILLINOIS
                                            OPINION BY
v.    Record No. 1342-99-1          JUDGE DONALD W. LEMONS
                                            MAY 2, 2000
LYNNECIA HAGINS


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        J. Derek Turrietta (William W. Nexsen;
        Stackhouse, Smith & Nexsen, on brief), for
        appellants.

        Robert A. Rapaport (Richard E. Garriott, Jr.;
        Knight, Clarke, Dolph & Rapaport, on brief),
        for appellee.


     Gwaltney of Smithfield, Ltd. ("employer") and Travelers

Indemnity Company of Illinois appeal the Workers' Compensation

Commission's decision that the employer failed to enforce a

safety rule and that Lynnecia Hagins' initial claim for benefits

was not barred by the provisions of Code § 65.2-306(A)(5).[1]

Finding no error, we affirm.

-----

        [*] Justice Lemons prepared and the Court adopted the opinion
in this case prior to his investiture as a Justice of the
Supreme Court of Virginia.

        [1] Employer initially presented the claim as coming under
Code § 65.2-306(A)(5), "[t]he employee's willful breach of any
reasonable rule."  The deputy commissioner decided that issue.
On appeal, the full commission in its resolution of the Code
§ 65.2-306(A)(5) issue, used the language "willful misconduct,"

## I.  BACKGROUND

From September 1995 until November 1995, Hagins worked at Gwaltney of Smithfield in the Production Department.  She was given instructions on "hand safety" and was aware of the employer's published safety rule:  "Never put any body part, object or clothing into operating or cycling machinery."

In November 1995, Hagins was transferred to the Sanitation Department.  Upon her transfer to the Sanitation Department, crew leader Chuck Jones and employee Russell Collins trained Hagins for one day on cleaning procedures.  After her training, Hagins did not work in the pigs' feet room again until February 12, 1996.  On February 13, 1996, while cleaning the pigs' feet machine, Hagins turned the machine on, washed it with a hose and, in an effort to remove a piece of meat that was stuck, placed her right hand into the stationary tray at the bottom of the machine that was designed to funnel the debris down a hole. Her hand was caught in the machine and was amputated.  Hagins has not returned to work after the accident.

On April 19, 1996, Hagins filed an application seeking an award for medical benefits and compensation for temporary total disability from February 14, 1996 and continuing from that date. The employer defended on the grounds that the accident was

which is pertinent to Code § 65.2-306(A)(1).  Because the issue in this case was argued under Code § 65.2-306(A)(5) and not Code § 65.2-306(A)(1), and because the issue is Hagins' "willful

caused by Hagins' willful breach of a reasonable rule or regulation and that she was not disabled as alleged. The matter was heard before a deputy commissioner on September 10, 1996.

At the hearing, Hagins testified that her direct supervisor, Jones, "showed [her] just stick your hand in it- [Jones] showed me to just stick your hand in and just scoop [the debris] down the hole." She testified that she was directed to stick her hand in the tray. She further stated that Jones demonstrated to her how to clean the tray by "just [sticking] his hand in there and just scoop[ing] it down the hole." Hagins was asked how she cleaned out the debris that "became stuck in the machine." She replied, "I always stuck my hand in and scooped it down the hole." She stated that the machine would be on and that she put her hand in the tray because "[t]hat was the way [Jones] did it, the way, the way he showed [her]." She testified that there were no signs instructing how to clean the machine or prohibiting the placement of hands in the tray area. When asked specifically about the incident, Hagins testified that she put her hand in the tray because "[t]hat's the way [Jones] did it and that's the way I, I did it that week that I was there."

Joyce Wright, a co-worker of Hagins, testified that on at least one occasion, Jones instructed her to use her fingers to

_____

breach of any reasonable safety rule" and not "willful misconduct," our analysis is limited to Code § 65.2-306(A)(5).

remove meat that was stuck in the tray when the high-pressured hose did not work even though the machine was running. Wright also testified that she saw both Jones and George Eure, another supervisor, use their hands to clean the machine while it was running. Her testimony further revealed that she was never "instructed to turn the machine off before placing [her] hands in that tray."

Jones testified that he did not instruct Hagins to place her hands in the tray of the pigs' feet machine. According to Jones, Hagins was taught to clean the pigs' feet machine by using a high-powered water spray and he instructed her not to place her hands in the moving equipment. When meat debris became stuck in the stationary tray, Hagins allegedly was instructed to remove it with a water hose and, if the water hose method failed, she was taught to disengage the machine before using a mechanical object to loosen the blockage. Jones said that he never placed his hands in moving equipment and that if he ever did, it would have been improper.

During the same direct examination, however, Jones admitted that he stuck his hand in the machine "[o]n occasions" when he thought no one was watching him. On cross-examination, Jones further admitted to putting his hand in the tray to knock debris down the hole when he was by himself. He stated that he would not be in trouble for doing so, "because [when he] did that, it would be when [he] was by [himself]." According to Jones,

"everybody takes shortcuts sometime [sic] and sometime [sic], you know, if you get away with it, you get away with it." On redirect examination, Jones testified that nine times out of ten the machine would have been off if he placed his hand in the tray to clear debris.

The deputy commissioner's opinion, dated October 10, 1996, found that Hagins violated a safety rule and denied her application for compensation and lifetime medical benefits. The commission issued an opinion dated August 18, 1997, reversing the deputy commissioner's opinion on the issue of whether or not the employer enforced the safety rule. Appellants appealed the commission's decision to this Court. We remanded the matter to the commission based upon our determination that the commission's ruling was not a final decision in the case because the nature and extent of Hagins' disability had not been determined.

The commission remanded the matter to the deputy commissioner regarding the nature and extent of disability. The deputy commissioner heard evidence and issued an opinion. Appellants requested review, and both parties filed written statements. The commission issued a ruling on May 14, 1999 re-affirming its determination that the employer failed to enforce a safety rule and that Hagins' initial claim for benefits was not barred by the provisions of Code

§ 65.2-306(A)(5).  Gwaltney and Travelers appeal the adverse ruling of the commission.

## II.  WILLFUL BREACH OF A REASONABLE SAFETY RULE

The commission's findings of fact are binding on appeal if supported by credible evidence.  See Rose v. Red's Hitch & Trailer Servs., Inc., 11 Va. App. 55, 60, 396 S.E.2d 392, 395 (1990); Code § 65.1-98.  When, however, there is "no conflict in the evidence, the question of the sufficiency thereof is one of law."  City of Norfolk v. Bennett, 205 Va. 877, 880, 140 S.E.2d 655, 657 (1965).

Code § 65.2-306 provides, in pertinent part:

> When compensation not allowed for injury or death; burden of proof.
>
> A.  No compensation shall be awarded to the employee or his dependents for an injury or death caused by:
>
> *     *     *     *     *     *     *
>
> 5.  The employee's willful breach of any reasonable rule or regulation adopted by the employer and brought, prior to the accident, to the knowledge of the employee;
>
> *     *     *     *     *     *     *
>
> B.  The person or entity asserting any of the defenses in this section shall have the burden of proof with respect thereto.

Accordingly, employer bore the burden of proving that Hagins' conduct was in "willful" disregard of a reasonable safety rule established by employer and made known to her.  In Brockway v. Easter, 20 Va. App. 268, 456 S.E.2d 159 (1995), we stated:

> To prevail on the defense of a willful violation of a safety rule, employer must prove that: (1) the safety rule was reasonable; (2) the rule was known to the employee; (3) the rule was promulgated for the benefit of the employee; and (4) the employee intentionally undertook the forbidden act.

Id. at 271, 456 S.E.2d at 161 (citation omitted). The forbidden act in this case involved Hagins using her hand to remove meat debris from the tray without first disengaging the machine.

"Whether the [safety] rule is reasonable and applies to the situation from which the injury results, and whether the claimant knowingly violated it, is a mixed question of law and fact to be decided by the commission and reviewable by this Court." Id. at 271-72, 456 S.E.2d at 161. The question whether an employee was guilty of willful breach of a safety rule, however, is a question of fact. See id. at 272, 456 S.E.2d at 161.

Although the evidence is sufficient as a matter of law to demonstrate that Hagins violated the safety rule, when the defense of willful violation of a safety rule is raised by the employer, "the employee may rebut the defense by showing that the rule was not kept alive by bona fide enforcement or that there was a valid reason for [her] inability to obey the rule." Buzzo v. Woolridge Trucking, Inc., 17 Va. App. 327, 332, 437 S.E.2d 205, 208 (1993). Whether the evidence was sufficient to

demonstrate that the safety rule was not strictly enforced is a

mixed question of law and fact, and the commission's ruling is

not binding on appeal.  See Virginia Electric & Power Co. v. Kremposky, 227 Va. 265, 270, 315 S.E.2d 231, 234 (1984).

Nevertheless, we hold that the commission correctly decided that Hagins successfully rebutted the employer's defense of willful breach of the safety rule.  The evidence revealed that at least one supervisor occasionally used his hand to remove stuck meat debris without fear of any disciplinary consequences from the employer.  Jones' testimony indicates that although he used his hands to remove meat debris from the tray approximately one time out of ten while the machine was operating, he could not recall whether he used his hands when training Hagins on the machine.  Wright's testimony indicates that she witnessed Jones on several occasions remove meat debris from the tray by using his hands and that she was instructed by Jones to use her hands to remove meat debris while the machine was running.  Furthermore, Wright regularly used her hands to remove stuck meat debris while the machine was engaged.

Based upon this evidence, employer's safety rule was not being enforced strictly.  "Proof of a pattern or practice of failing to discipline employees guilty of willful violations of a safety rule defeats the defense afforded an employer by [Code § 65.2-306], . . . when such violations occur under circumstances charging the employer with knowledge and acquiescence."  Kremposky, 227 Va. at 270-71, 315 S.E.2d at 234 (quotation marks and citations omitted).  Jones was Hagins' crew

leader and was responsible for her training.  He was also responsible for enforcing the safety rules.  We agree with the commission that "[h]is testimony that he was aware that employees sometimes took short cuts proves that someone in a supervisory capacity representing the employer was aware that the safety rule was being violated."

We find credible evidence to support the commission's decision that the safety rule was not strictly enforced.

### III.  NATURE AND EXTENT OF LIABILITY

Because the commission was correct in reversing the deputy commissioner and allowing Hagins' claim under Code § 65.2-306(A)(5), the commission correctly remanded the case to the deputy commissioner for the determination of the nature and extent of her disability.

### IV.  CONCLUSION

For the reasons stated above, the commission's decision is affirmed.

Affirmed.